# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Hughes *versus* First National Bank of Waynesburg.

1. Where an assistant cashier of a bank, upon his own responsibility, receives bonds on deposit for safe keeping and subsequently, as cashier, fraudulently pledges them for a debt of the bank, the fraud of the cashier becomes the fraud of the bank. The bank cannot retain the fruits of the crime and, at the same time, repudiate the fraud of its agent.

2. The depositor having been kept in ignorance of this conversion by frequent promises of the cashier to return the bonds, the Statute of Limitations did not begin to run against him until his discovery of the fraud.

3. In such a case the law will not presume a notice of the fraud from external circumstances, which may have been sufficient to put a prudent man on inquiry.

October 5th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Greene county :* Of October Term 1884, No. 27.

Assumpsit by Charles Hughes, guardian of Elizabeth Bell, against the First National Bank of Waynesburg, to recover the sum of $2,400 with interest from January 1st, 1876. Pleas, non assumpsit, non assumpsit *infra sex annos*, payment with leave, etc.

On the trial, before WILLSON, P. J., the following facts appeared :

On September 27th, 1865, John Bell, the father of Elizabeth

(428)

Bell, placed certain United States 7-30 government bonds to the amount of $11,400 in the First National Bank of Waynesburg and received a certificate to that effect, signed by A. L. Myers "for the cashier." Some time afterwards these bonds, were exchanged by J. C. Flenniken, cashier of said bank, for 5-20 bonds, to an equal amount, but the original certificate was not lifted, nor was any other certificate given. John Bell died intestate in October, 1866, leaving his wife and five children surviving him. Charles Hughes, the plaintiff in this case, was appointed guardian of Elizabeth, the oldest child, and Samuel Luse and Jesse K. Bailey were appointed guardians of the other four children; and letters of administration upon the estate were issued to his widow and James Bell. In September, 1871, the administrators settled their final account, showing a balance in their hands of about $30,000, which consisted in part of these bonds. In pursuance of an agreement between them, the administrators and guardians met at the bank, on October 2d, 1871, and the certificate of September 27th, 1865, was then surrendered, and other certificates were issued to the guardians—the one to Charles Hughes, guardian of Elizabeth, being in the following form:—

"FIRST NATIONAL BANK OF WAYNESBURG.
CAPITAL STOCK $100,000.

R. W. DOWNEY,　J. C. FLENNIKEN,　B. F. FLENNIKEN,
President.　　　　　Cashier.　　　Assistant Cashier.

"FIRST NATIONAL BANK OF WAYNESBURG, }
October 2d, 1871. }

"Charles Hughes, Guardian of Elizabeth Bell, has left for safe keeping $2,400 U. S. 5-20 bonds.
"B. F. FLENNIKEN."

A similar paper was given to the guardians of the other children for 5-20 bonds to the amount of $9,000.

During the years from 1869 to 1873, inclusive, various loans were made by the bank with Ira B. McVay and Company, their correspondents in Pittsburgh, to secure which government bonds were deposited and when the loans were called the bank was unable to pay and the bonds, in amount sufficient to cover the call, were sold. The bonds thus given as collateral belonged to plaintiff and were given as collateral and sold without the knowledge or authority of the guardian.

On January 14th, 1874, the bank went into voluntary liquidation and shortly afterward the plaintiff called and demanded the bonds. He was informed by B. F. Flenniken, the assistant cashier, that the bonds were not in the bank, but had been sent to Pittsburgh for safe keeping. He said that they were "all right" and that he would have them brought back in a

few days. J. C. Flenniken told the same story and made repeated promises to get the bonds from Pittsburgh and return them.

The interest was regularly paid on these bonds until January 1st, 1876, which was some two years after the sale of the bonds. In April of that year the plaintiff first learned that the bonds had been sold by McVay & Co., and at the trial of a criminal prosecution, brought by Hughes and the other guardians, against J. C. Flenniken for embezzlement, it was discovered that they had been appropriated to the use of the bank. Plaintiff, subsequently, on February 18th, 1882, brought this suit against the bank.

The defendant requested the court to charge "that the plaintiff's claim being barred by the Statute of Limitation he cannot recover." Answer. "Affirmed." Exception. (First assignment of error.)

Plaintiff requested the court to charge, *inter alia*, as follows:—

"3. If the jury believe from the evidence that the bonds in suit were left with the defendant bank as a special deposit, and were afterwards hypothecated by the cashier of said bank for a debt of the bank and sold by the pledgees and the proceeds applied to the payment of the debt of defendant bank, without the knowledge, authority or consent of the plaintiff, the said hypothecation and sale was a fraud on the plaintiff, and the Statute of Limitations does not begin to run against the plaintiff's claim until the discovery by him of such appropriation." Answer. "Refused." Exception. (Second assignment of error.)

The court charged the jury as follows:—" This is an action brought by Charles Hughes, guardian of Elizabeth Bell, against the First National Bank of Waynesburg for the purpose of recovering the value of certain United States bonds deposited with the defendant bank as a special deposit in the year 1871. Under the evidence in the case as given on the part of the plaintiff, we are of the opinion that it is our duty to instruct you as we have been requested to do by the counsel for the defendant bank, and that is, that the plaintiff's claim being barred by the Statute of Limitation, the plaintiff is not entitled to recover and your verdict will be for the defendant."

Verdict for the defendant and judgment thereon. Plaintiff then took this writ, assigning for error the answers to the points as above and the charge of the court.

*James E. Sayers* and *E. M. Sayers*, for plaintiff in error.— When the Statute of Limitations is pleaded to an action

founded on fraud, a replication which avers ignorance of the fraud until within six years is sufficient: 1 Pickering, 435. The question of concealment of the fraud is for the jury: Morgan v. Tener, 2 Nor., 305; Wickersham v. Lee, Id., 416. The law will not presume that the injured party had notice of the fraudulent acts: Mitchell v. Buffington, 10 W. N. C., 361.

*George L. Wily* (*Buchanan & Walton* with him), for defendant in error.—The plaintiff has not shown such fraudulent concealment of the facts as would, in the most favorable view of the case that can be taken for him, relieve him from the operation of the Statute of Limitation. "Courts of equity will not interpose if a party slumber upon his right unreasonably, after the detection of fraud, or the means afforded of detection:" Angell on Limitations, sec. 190. Instead of exercising any diligence the plaintiff has been guilty of the grossest negligence. It was gross negligence not to demand the production of the bonds at the time the certificate was issued; it was gross negligence not to withdraw the bonds when in the fall of 1874, or before that time, he learned that the bank had got into difficulties and had gone into liquidation; it was gross negligence to repose confidence in the repeated promises of Flenniken, which were always broken; it was gross negligence not to sue for the bonds when Flenniken failed to surrender them on demand; and it was gross negligence to delay bringing suit nearly twelve years after the embezzlement occurred.

Mr. Justice PAXSON delivered the opinion of the court, October 19th, 1885.

The single question presented by this record is whether the learned judge of the court below was correct in holding that the plaintiff's claim was barred by the Statute of Limitations. The action was assumpsit, and to the defendant's plea of non assumpsit *infra sex annos* the plaintiff replied specially that the defendant bank, in violation of the trust and confidence reposed in it, had converted and did convert certain bonds to the amount of $2,400 to its own use, and fraudulently and deceitfully neglected and refused to give information thereof, and kept the plaintiff entirely ignorant thereof until about the first of January, A. D. 1877, less than six years before the commencement of this suit, when the said plaintiff accidentally discovered said concealment and fraud.

It may be that in the origin of this transaction the bank was not responsible for the bonds. They appear to have been received for save keeping by B. F. Flenniken, who was the assis-

[Hughes *v.* Bank.]

taut cashier, as an individual transaction, and for the accommodation of the plaintiff.    There is no trace of any authority from the board of directors to receive such deposits.    But when Mr. Flenniken, as cashier, pledged the bonds for the debt of the bank to Ira B. McVay & Co., the matter became a transaction of the bank; the fraud of Mr. Flenniken became the fraud of the bank, and his concealment of the pledge became the bank's concealment.    The bonds were subsequently sold by McVay & Co., and the proceeds went to pay the defendant bank's debts.    The bank cannot retain the fruits of the crime and repudiate the fraud of its agent.    No authority is needed for so plain a proposition.

The certificate of deposit bears date October 2d, 1871.    The suit below was commenced February 18th, 1882.    It was not until the month of April, 1876, that the plaintiff was informed that the bonds had been pledged and sold, and the proceeds credited to the bank.    It is true the plaintiff called at the bank in 1874, and at several other times subsequently to get his bonds and take them away.    But he was always put off with excuses; he was informed that the bonds had been sent to Pittsburgh for safe keeping.    In the meantime the bank continued to pay him the interest, even after the bonds had been sold.    All this was a fraud and concealment, well calculated to throw the plaintiff off his guard. Repeated promises were made to him by the cashier to get the bonds from Pittsburgh and return them.    But they never came. Performance of the promise was evaded and fresh promises substituted.    It may be that these were circumstances of suspicion, calculated to alarm a prudent man.    If we concede this to be so it does not help the defendant bank.    It cannot take advantage of its own wrong.    Holding the plaintiff's property and having fraudulently converted it to its own use, and concealed that fact from him, we will not be astute to hold the plaintiff to knowledge which he did not possess.    The concealment of the fraud prevented the running of the Statute: Morgan *v.* Tener, 2 Norris, 305 ; Wickersham *v.* Lee, Id., 416.

From April, 1876, to the commencement of this suit was less than six years.    The jury should have been instructed that if the fraud was concealed from the plaintiff until April, 1876, the plaintiff's claim was not barred by the Statute.

The judgment is reversed and a *venire facias de novo* awarded.