Independent B. & L. Assn. *v.* Real Estate Title Co., Appellant.

*Agency—Fraud of agent—Satisfaction of mortgage—Equity.*

A real estate title company is liable for the loss of a fund received by the solicitor of the company while acting within the apparent scope of his duties, and embezzled by him.

A client of a real estate title company made to the company two applications for loans, one to be used in paying off the mortgage of a building and loan association on her Thompson street house, and the other to be secured by a mortgage on a house on Morris street which she proposed to purchase. The company was to do the conveyancing. To secure possession of the Morris street house, she paid to the solicitor of the company the portion of the purchase money which she was to pay in cash. The company, in settling with the vendor, did not apply the cash thus received by the solicitor, but used the money applied for on the Thompson street application. Subsequently the solicitor notified the treasurer of the building and loan association to come for settlement, and, when he did so, gave him fifty cents and requested him to go to the recorder's office and satisfy the mortgage of the association. When this was done, the solicitor gave the treasurer his personal check, and requested him to hold it for three days before presenting it, which was done. When the check was presented, there were no funds to meet it. On a bill in equity for the cancellation of the entry of satisfaction: *Held*, (1) that a court of equity had jurisdiction, notwithstanding the additional remedy at law by assumpsit; (2) that the action of plaintiff's treasurer in accepting the solicitor's personal check and holding it for three days did not, under the circumstances, discharge the title company from liability; (3) that the solicitor was acting within the apparent scope of his duties in the transaction, and (4) that plaintiff was entitled to the relief sought.

Argued March 24, 1893. Appeal, No. 257, Jan. T., 1893, by

defendant, from decree of C. P. No. 1, Phila. Co., March T., 1891, No. 793, on bill in equity in favor of plaintiff.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Bill for cancellation of satisfaction of mortgage.

The case was referred to F. J. Shoyer, Esq., as master, who reported as follows :

" The bill in this case was filed by the complainant, the Independent Building Association of the city of Philadelphia, praying that the entry of satisfaction of a certain mortgage held by the complainant be stricken off the record, on the ground that the entry of said satisfaction had been procured by the fraud of one Henry C. Thompson, the solicitor and agent of the Real Estate Title Insurance and Trust Company.   The bill also prayed for general equitable relief as against the said defendant company and Hugh Wilson and Martha Ann his wife, the said Hugh Wilson and Martha Ann his wife being made defendants in said bill, because they are owners of said property on which the said mortgage was secured, and because the defendant company alleged that the said Henry C. Thompson acted as the attorney and agent of the said Hugh Wilson and Martha Ann his wife.

" The defendants filed separate answers, denying generally the allegations for equitable relief in the bill of complaint filed ; the said defendant company averring that the said Henry C. Thompson, in having said mortgage marked satisfied, acted as the attorney and agent of Hugh Wilson and Martha Ann his wife ; and the said Hugh Wilson and Martha Ann his wife, in their answer filed, averring ,that Henry C. Thompson acted as the solicitor of the said Real Estate Title Insurance and Trust Company in having said mortgage marked satisfied, and that they dealt only with said company, and not with said Henry C. Thompson.

" The facts as shown by the testimony are as follows : The said Hugh Wilson and Martha Ann his wife were the owners of two certain lots or pieces of ground situate on the south side of Thompson street, formerly Torr avenue, in the Twenty-fourth ward of the city of Philadelphia, and on the eighth day of November, 1879, they executed a bond and mortgage for the sum of $2,600 to the complainant, secured on said lots, which said

mortgage was duly recorded and was afterward reduced to something over $1,000.

"And the said Hugh Wilson on the fifteenth day of November, 1889, made application to the Real Estate Title Insurance and Trust Company for a loan of $1,100 to pay off the complainant's mortgage reduced as aforesaid, and in said application it was written that the complainant's mortgage was to be paid off. This application was some time afterward increased to the sum of $1,400.

"Five days later, on November 21, 1889, Martha Ann Wilson made application to the defendant company for a loan of $1,600 on a property on the south side of Morris street in the city of Philadelphia, which she had agreed to purchase from one Mr. Blair for $2,600; she paid him fifty dollars on account, leaving $950 to be paid by her in cash at time of settlement.

"Some delay occurring in the settlement of the Morris street property, and Mrs. Wilson desiring to move into the same, saw Mr. J. B. Henkles of the defendant company, and he told her that if she would pay the balance of $950 to Mr. Henry C. Thompson, he would give her an order on Mr. Blair for immediate possession; accordingly Mrs. Wilson, on December 9, 1889, paid the $950 to Mr. Thompson and got his receipt for the same, written on a letter head of the defendant company, where his name appeared as solicitor of the defendant company, together with the other officers.

"On December 24, 1889, the defendant company made settlement with Hugh Wilson and Martha Ann his wife on the Morris street property, and applied the money advanced by it on the Thompson street loan to the purchase money of the Morris street property, although the $950 paid to the said Henry C. Thompson was paid to him as the purchase money of the Morris street property; and the money advanced by the defendant company on the Thompson street property was thus misappropriated by it, notwithstanding it was expressly written on the Thompson street application that said loan was asked for to pay off the complainant's mortgage.

"On July 2, 1890, in consequence of a notice received from Mr. Thompson, James Gourley, the treasurer of the complainant, called at the Title Company's office, and was given fifty cents by Mr. Thompson, and directed to go satisfy the com-

plainant's mortgage of record and return, and he would give him the money. Mr. Gourley accordingly went to the recorder's office and entered satisfaction of the complainant's mortgage, and returned to the defendant's office, and was given the individual check of Mr. Thompson, which he did not examine, with the request that he hold the same till Saturday, which was July 5th, and Mr. Gourley in accordance with said request held said check until the following Saturday, when he presented the same, and there was not sufficient money to meet it.

" The argument of counsel for the defendant company was, first, that Henry C. Thompson was not the agent of the said defendant company at the time the mortgage was satisfied belonging to the complainant; second, that even if the said Thompson was for all ordinary purposes the agent of the said defendant company in this transaction, to wit, the satisfaction of complainant's mortgage, Mr. Gourley dealt with him in his individual capacity as the attorney for the Wilsons, and by taking his individual check relieved the defendant company from all responsibility; and, third, that even though the defendant company were bound by the acts of the said Henry C. Thompson, the act of the said Thompson was a mere breach of contract, and the defendant company is' not answerable in equity, as the complainant has a complete and adequate remedy at law.

" As to the first position taken by the defendant, it may be said that it is not supported by the evidence, for not only do the Wilsons testify that they did not in any way deal with Mr. Thompson except as the solicitor and agent for the defendant company, but the testimony and conduct of the defendant company's witnesses and officers go a long way toward overthrowing such a position. It need but to be stated to be conceded that the defendant company's officers may bind it in all their acts within the scope of their authority, and if it is to be believed, as testified to by Mrs. Wilson, that she was directed by Mr. Henkles, one of the company's officers, to pay to Mr. Thompson the $950, which I find as a fact was the case, then the defendant company from that moment was bound to see that the $950 was applied only to that purpose which it was paid for, namely, as purchase money on the Morris street property. And, further, when Mrs. Wilson made her application

to the defendant company through its agent, the said Mr. Hen-
kles, for a loan on the Thompson street property to pay off the
complainant's mortgage, and Mr. Henkles wrote on said appli-
cation that the complainant's mortgage was to be so paid off,
the defendant company undertook and became liable to see
that $1,100, afterward increased to $1,400, loaned on the
Thompson street property, was used for no other purpose than
to pay off the mortgage of the complainant.

"And that afterward, when the defendant company, in set-
tlement for the Morris street property, took the money loaned
on the Thompson street property, and with full notice, which
it had, allowed the $950, deposited at its request for that pur-
pose, to remain in the hands of Mr. Thompson, and the com-
plainant's mortgage to remain unsatisfied of record, it clearly
guaranteed the money due on the complainant's mortgage, and
relied absolutely on the statement of Mr. Thompson, and clearly
intended to be bound by his agency, for on no other ground can
the conduct of the defendant company be accounted for, as
the defendant company would not rely on the statement of an
attorney of persons borrowing money from it that he had their
money, and would satisfy a mortgage which was a prior in-
cumbrance to the one on which the company was advancing
money, unless they regarded the possession of the money by
said attorney their possession, which was the case in this mat-
ter, and I so find as a fact, and that the said Henry C. Thomp-
son was the agent and solicitor of the defendant company, and
that there is no evidence of any weight to show that at any
time during these transactions did Mr. Thompson act as the at-
torney or agent of the Wilsons except as the agent and attor-
ney of the defendant company.

"Now, in point of order, the master takes up the second
position of the defendant company, to wit: that Mr. Gourley,
the treasurer, dealt with Mr. Thompson in his individual ca-
pacity, and in so doing and taking the individual check of Mr.
Thompson the defendant company is relieved.   On this point
the only direct testimony is the testimony of Mr. Gourley him-
self, who testifies that he went to the office of the defendant
company, and was told by Mr. Thompson to go to the recorder's
office and satisfy the mortgage, and that he, Thompson, would
give him the money on his return.   Now, considerable stress

was laid on the personal pronoun ; that ' I ' meant Mr. Thompson would give him the money. The master is of the opinion that Mr. Thompson would under all and any circumstances, as the agent of the company, use this pronoun in referring to himself as the person who would on behalf of the company pay out money. While, on the other hand, every inference is against the fact that Mr. Thompson acted in his individual capacity in giving his check to Mr. Gourley, the treasurer of the complainant, as Mr. Thompson had no interest in having the mortgage of complainant satisfied ; the money he had in his possession was the money paid to him as the solicitor of the company, and should have been applied to the settlement of the Morris street property, while the money that the defendant company should have applied to the satisfaction of the complainant's mortgage had already been appropriated by it wrongfully, and from the consequence of that act it could not escape. And as between the defendant company and the Wilsons, the defendant company was bound to see that the complainant's mortgage was satisfied, for it had agreed to advance the money for that purpose, and took the Wilsons' bond and mortgage and placed the same on record to secure the money so advanced ; and any act Mr. Thompson did to relieve the defendant company from the responsibility it was already under to see that the complainant's mortgage was satisfied, he did it clearly as the agent of the defendant company, and the complainant had a right to believe he was so acting as the agent of the defendant company, as he was their solicitor and was occupying the office of the defendant company when Mr. Gourley received the check.

" The fact that Mr. Gourley received the check of Mr. Thompson does not vary the case, for if [Mr. Thompson was acting as the agent of the defendant company there was nothing in the fact that he gave his individual check to put Mr. Gourley on suspicion or notice,] [19] as the defendant company, by having Mr. Thompson as its solicitor, invited the world to deal with him as a person to be trusted, and this more especially so as the defendant company had notice of the irregularities of Mr. Thompson some time prior to July 2, 1890, and had asked him to resign on that account, but it still continued him in its employ, and thereby made it possible for him to defraud innocent persons who had no notice of his misconduct,

and who, under color of the confidence the defendant company reposed in him, were made victims of his fraud. And the master finds that therefore [the defendant company is responsible for acts of the said Mr. Thompson in giving his check and having said mortgage satisfied, and for the subsequent non-payment of said check, as it was given solely for the benefit of the defendant company.] [20]

" The master will now proceed to examine the last point of the defendant company's argument, to wit, that there is a complete and adequate remedy at law, and that therefore equity has no jurisdiction. Where any transaction is tainted with fraud, a court of equity is always open to the injured party, and has concurrent jurisdiction with the courts of law. That Mr. Thompson perpetrated a fraud on Mr. Gourley, the treasurer of the complainant, there can be no doubt, for he asked Mr. Gourley to go to the recorder's office and return and get his money; this Mr. Gourley did, with the exception that when he returned to the defendant's office he would receive the money, but when he got there Mr. Thompson had already committed his fraud and gotten said mortgage satisfied, and the remaining step was only to ask Mr. Gourley to hold his check till Saturday, not because he intended that it should be paid at that time, for, on the contrary, he had money in bank when he gave the check, but only to give him a chance to carry his fraud to its fullest limit, and enable him to do just precisely what he did do—flee the jurisdiction a defaulter in a very large amount. And the master therefore finds as a fact that [Mr. Thompson committed a fraud on the complainant in inducing him, the said Mr. Gourley, by a trick, to satisfy the complainant's mortgage, and equity has jurisdiction.] [21]

" That a court of equity will decree the cancellation of satisfaction of a mortgage procured by fraud or mistake is decided by a number of cases, among which are the following: McLean v. Lafayette Bank, 3 McLean, 587; Mallett v. Page, 8 Ind. 364; Hunt v. Fox, 5 B. Mon. 327; Bruce v. Bonney, 12 Gray, 107; Fassett v. Smith, 23 N. Y. 252; Wilton v. Mayberry, 43 N. W. 901; Dudley v. Bergen, 23 N. J. Eq. 397; Dubois v. Schaffer, 23 N. J. Eq. 401.

" The defendant company cannot reap the benefit of the fraud committed by Thompson, even though its neglect had not facil-

itated the accomplishment of said fraud, for, if a false and fraudulent representation is made by an agent, the principal, although he be innocent of the fraud, cannot derive any benefit from the transaction founded on such misrepresentation. Wherever a fraud has been committed, not only is the person who committed the fraud precluded from deriving any benefit from it, but every innocent person is so likewise precluded unless he has innocently acquired a subsequent interest. Bispham Eq., section 217. And surely then the person who has within his power the means of preventing such fraud cannot claim any benefit from it when he fails to exercise such power in behalf of the person whom it is his duty to protect.

" If one of two innocent parties is to suffer by the fraud of a third party, the person who employs the fraudulent agent must suffer rather than the other: Nixon v. Hamilton, 1 Ired. Eq. 57.

" It has been decided in a recent case in this state, Evans v. Goodwin, 132 Pa. 136, that ' when the defendant in a bill of equity has conceded the jurisdiction so far as may be implied from his failure to demur and his subsequent acquiescence in the reference of the cause to a master, the case should be very clear to justify setting the proceedings aside for want of jurisdiction.'

" The master therefore is of the opinion that a case for equitable relief has been clearly established, and that a decree should be made granting the prayer of the complainant, and at the same time do equity to the rights of the Wilsons, who are clearly without fault. The master was at first disposed to report a decree striking off the entry of satisfaction of the plaintiff's mortgage, and restoring to said mortgage its priority of lien on the premises on which it was secured, and ordering and directing that the amount due on the said mortgage, to wit, $1,042.17, with interest from July 2, 1890, should be credited on the subsequent mortgage held by the Title Company against Mrs. Wilson's property, but upon further consideration he has come to the conclusion that a money decree would best suit the equities of the case by not interfering with or affecting the position of Mrs. Wilson, who is no party to the transaction of fraud of Mr. Thompson. He therefore submits a form of decree against the Real Estate Title Insurance and Trust Company, one of the defendants, for the payment to the complainant of the sum of $1,042.17, with interest from July 2, 1890."

Exceptions filed by defendant averred, inter alia, that the master erred in not finding: (4, 5, 6) That no promise was made by Thompson which he professed to make on behalf of the corporation defendant. (7) That the check was handed to the treasurer on the second of July. There was a balance on that day, on deposit in the company on which it was drawn, of $2,938.68. At the close of business on the following day there was on deposit to the credit of Thompson $2,180.80. The account from which this check was drawn was an individual one. (8) That the treasurer trusted Thompson in an individual matter of his own, with the result of a loss to him individually of $3,000. He was personally familiar with Thompson for many years. Thompson for many years, until about three or four years prior to the satisfaction of the mortgage, had acted as solicitor of the corporation plaintiff. (9) That the trust company made a settlement for the Morris street house purchased by the Wilsons in December, 1889 [reciting it]. (10) That at the time of the satisfaction of the building association mortgage there were no moneys in the hands of the corporation defendant, saving the sum of upwards of $300, which was afterwards paid to the Wilsons. It had paid the proceeds of the two mortgages of $1,600 and of 1,100, in effect, for the benefit of the Wilsons in making that purchase. (11) That the balance taken, upwards of $300, on a mortgage of $1,400 on the Thompson street house, was paid in a check of the corporation defendant to the Wilsons, which was indorsed by the latter, which was collected by Thompson, and out of which he compensated himself for moneys claimed to be due to him by the Wilsons. The balance he paid over to them in his own individual check upon his own bank. (12) That a statement of the amount due in this final settlement was delivered in writing by Thompson to the Wilsons [reciting it]. (13) That at the time Gourley satisfied the building association mortgage there was in the hands of Thompson a sum of money which had been paid to him in December, 1889, by the Wilsons, sufficiently large to pay what was due to the building association. (15) That the corporation was ignorant of the fraud of Thompson in the matter, and dealt in good faith in the belief that it had paid over all the moneys due upon the two mortgages, saving upwards of $300, in the payment for the Morris street house in Decem-

ber, 1889. (16) That the corporation defendant gave no authority to Thompson, directly or indirectly, to promise on its behalf to pay Gourley the money due on the building association mortgage after it was satisfied. It was ignorant until after Thompson's flight of the fact that any such promise had been made. (17) That a court of equity had no jurisdiction of the subject-matter of the bill, because there was no mistake or fraud connected with the satisfaction. (18) That the only remedy in the case was at common law against Thompson, if the promise was made on his own behalf, or against the Real Estate Title Insurance and Trust Company if it was made by Thompson on its behalf. (20) That the conduct of plaintiff in taking the individual check of Thompson, and in giving him time, exonerated the exceptant from any liability to the plaintiff. (22, 24, 26) The findings in brackets above.

The exceptions were dismissed.

*Errors assigned* were (1) in not dismissing bill; (2, 3) entering decree; (4–21) dismissing exceptions as above, quoting them.

*John G. Johnson,* for appellant.—Thompson did not act as agent of appellant in his dealings with the building association treasurer, and did not profess to do so.

The acceptance by the building association treasurer of Thompson's individual check, and his acquiescence in the request to defer collection of the same, though there were moneys in bank to meet it, exonerated appellant from any liability, even if such liability otherwise existed: Home B. & L. Ass. v. Kilpatrick, 140 Pa. 405.

Even though Thompson was agent of appellant, authorized to make the promise he made to the building association treasurer, the remedy of the complainant was at law, in an action upon the promise, not in equity.

*Samuel Gormley, Jacob Snare, Jr.,* with him, for appellee.— If one of two innocent persons is to suffer by the fraud of a third, the person who employs the fraudulent agent must suffer rather than the other: Nixon v. Hamilton, 1 Ired. Eq. 57; Hern v. Nichols, 1 Salk. 289; Bispham's Eq., § 217; Thomson v. Bell, 10 Exch. 10.

A man cannot reap the fruits of his agent's fraud: Jones v. Natl. Bldg. Assn., 94 Pa. 215; Hunt v. Moore, 2 Pa. 105; Musser v. Hyde, 2 W. & S. 314; Mundorff v. Wickersham, 63 Pa. 87.

Courts of equity will exercise a concurrent jurisdiction with courts of law in all cases of fraud: 1 Story's Eq., 184–5, 440; Allison & Evans's Ap., 77 Pa. 221; Masson's Ap., 70 Pa. 26; Bispham's Eq. 478.

Equity will decree a reconveyance when a deed is set aside for fraud: Bates v. Graves, 2 Vesey, Jr. 295; Sowerby v. Warder, 2 Cox, 268; Brightly's Eq. 119; Henderson v. Hays, 2 Watts, 148; Fowler's Ap., 87 Pa. 449; Bispham's Eq., pp. 200, 565; Story's Eq., 64 K. and notes; Ressler v. Witmer, 1 Pears. 174; Evans v. Goodwin, 132 Pa. 136; Mortland v. Mortland, 151 Pa. 593.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1893:

Thompson was the solicitor of the appellant company and authorized to act for it in matters coming to him in that capacity. Of this Mrs. Wilson was informed, for she not only saw him at the company's office, but was referred to him by the application clerk. She had made two applications to the appellant for loans of money, the first to be secured by mortgage on her Thompson street property, and to be used chiefly to pay off the plaintiff's mortgage, the second to be secured by mortgage on the Morris street house, and to be used as part of the purchase money for it. The appellant was not only to lend the money, but also to do the conveyancing of both operations, and its solicitor, Thompson, was the officer to whom Mrs. Wilson was referred for that purpose. To get possession of the Morris street house, for which she was urgent, Mrs. Wilson paid the appellant $950 which were to be used in the settlement with the vendor. This was paid by direction of the application clerk, to Thompson; who unquestionably received it as an officer and agent of the appellant. When however that transaction was closed with the vendor, the appellant did not apply the $950 to it, but settled with the money it was to loan on the other application, leaving the $950 of Mrs. Wilson's money in Thompson's hands. But the money to be advanced on the other application was specifically understood to be for the pay-

ment of plaintiff's mortgage, which is marked in the application as to be paid off, and it must necessarily have been so to make appellant's mortgage safe. Thompson who thus mixed up the two transactions was the officer of the appellant, and did it in that capacity. Further, in the same capacity he notified the plaintiff's treasurer to come for settlement, and directed him to take the preliminary step by entering satisfaction on the plaintiff's mortgage, whereupon he would receive the money. All this the appellant was bound to know, and whether it knew in fact or not, it was liable, because Thompson's acts were done as its officer, and it was his position as such that gave him the opportunity. It is clear therefore that not only the Wilsons, but the plaintiff, had an equity against the appellant to make good to them any loss from Thompson's misapplication of that fund.

This brings us to the second branch of the case, whether the act of Gourley, the plaintiff's treasurer, in taking Thompson's check, and by Thompson's request holding it for three days, was an acceptance of Thompson's individual obligation which discharged the appellant from liability. This question is not free from difficulty. In theory the payment of the money and the satisfaction of the mortgage are dependent parts of the same transaction and should be contemporaneous. But the court is entitled to take notice that in cases like the present of replacing an old mortgage by a new one to a different party, the acts in practical business seldom are contemporaneous. The plaintiff's mortgage was the first incumbrance ; until it was actually satisfied of record, the appellant could not get a clear search showing the priority of its own mortgage, to go among its title papers, and such requirement, if not the uniform custom of Philadelphia conveyancing, is at least frequent enough to relieve compliance with it from any prima facies of being out of the ordinary course of business. The act of Gourley therefore in satisfying plaintiff's mortgage before the receipt of the money was not a substitution of Thompson's personal liability for that of appellant. Nor was the acceptance of Thompson's personal check. For the purposes of this transaction Thompson was the appellant, the officer who was authorized to represent it, and the only one with whom the plaintiff had anything to do. The transaction itself was a loan of fourteen hundred dollars

to Mrs. Wilson, but the money was not handed to her, the company itself took charge of the application of it, one thousand and odd dollars to pay off the plaintiff's prior mortgage, the rest for the expenses of searches, conveyancing, etc., and then the balance to Mrs. Wilson. Thompson was the officer of the company who handled this sum for these purposes, and when he gave Gourley half a dollar to pay for the entry of satisfaction on the mortgage Gourley was not bound to ask him if that was his own or the company's money, he was entitled to presume it was the company's, and the same presumption fairly attaches to the check for the amount of the mortgage, although in form it was the personal check of Thompson. The same view applies to the compliance with Thompson's request to hold the check until Saturday. This result might be reached summarily on the familiar ground that where one of two innocent parties must suffer by the fraud of another, the one who afforded the opportunity must bear the loss. This request of Thompson was clearly part of his fraudulent scheme, and it was his position as appellant's officer that enabled him to carry it out. But beyond this we are of opinion, though we have not reached it without some hesitation, that the compliance with the request to hold the check was not so far out of the usual course of business as to amount to a discharge of appellant. Transactions of this kind usually occupy some time. There are papers to be prepared and executed, searches to be procured, interest and expenses to be calculated, and the money to be got for the balance on final settlement. This particular loan had in fact been pending since the previous December. During all that time it had been in Thompson's hands, though it was the company's matter, with which he had no personal concern, but was acting as the company's officer. Gourley might fairly suppose the delay requested was on the part of the company, for reasons connected with the settlement; such belief on his part would be a natural result of the action of the company in giving Thompson entire authority, actual or apparent, over the matter, and its admitted pendency for more than six months.

The question of jurisdiction may be briefly disposed of. The bill was for the cancellation of the entry of satisfaction on complainant's mortgage, and its reinstatement as a prior lien to

appellant's mortgage, on the ground that the entry had been procured by the fraud of appellant's agent, and although an action of assumpsit might have been brought on the agent's promise, or for money had and received for plaintiff's use, yet relief in a clear subject of equity jurisdiction is not barred by the existence of a remedy at law, even if, in view of the triangular nature of the contest here, between the rights of the plaintiff, the appellant and Mrs. Wilson, that remedy could be considered adequate.

We have not thought it necessary to notice in detail the numerous assignments of error, even as reduced and classified in appellant's argument. We have considered the case on the facts found by the master, because careful perusal of the evidence has failed to satisfy us that those found are not correct, or that those omitted in the findings would change the result. The case is one of hardship in any aspect, for it involves loss through the fraud of a person trusted by all parties, but the general conclusion is unavoidable that Thompson was the agent of appellant, with actual authority as to a large part of the transactions, and with such apparent authority throughout, as to make it answerable for his action.

Decree affirmed.