518 A.2d 582

**Warren M. COHEN and Adele Cohen, Appellants,**

v.

**Harvey BLANK and Joel Cassway, Ind. and T/A Perot Street Group, and Mary McCullum, Ind. and T/A E.J. Bulman Realty.**

Superior Court of Pennsylvania.

Argued March 11, 1986.

Filed Dec. 4, 1986.

Fred Lowenschuss, Philadelphia, for appellants.

Barry J. Goldstein, Philadelphia, for appellees.

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order of the trial court which granted judgment notwithstanding the verdict in favor of appellees-defendants, Harvey Blank and Joel Cassway, who sold a townhouse to appellants-plaintiffs, Warren Cohen and his spouse, Adele Cohen. We must reverse and remand for the reasons herein stated.

Appellants raise the following issues: (1) whether the trial court erred in entering judgment notwithstanding the verdict because the appellants presented documentary and testimonial evidence that they reasonably relied upon appellees' representations that the parking space was included in the sale of the property, the appellees' own real estate agent believed and intended that the parking space was to be conveyed, and appellees never informed the appellants that the parking space would not be included as advertised; (2) whether the trial court improperly invaded the province of the jury in granting judgment notwithstanding the verdict for the reasons that the jury's verdict was "against the weight and sufficiency of the evidence"; and (3) whether appellants should have been entitled to receive prejudgment interest, additional damages, and counsel fees because the evidence established that appellees placed a specific value on the parking space in question and because appellees

fraudulently failed to convey the space to appellants on a specific date.

The record establishes the following set of facts which were summarized by the trial court:

Mr. and Mrs. Cohen saw an advertisement in the newspaper offering 2334 Perot Street with a parking space for sale for $130,000. (N.T. p. 69) The house fronts on Perot Street and goes straight through to Olive Street. The parking lot was not contiguous to the house and has an Olive Street address. The Cohens went to see Mrs. McCullum, employed by Bulman Realty, the brokers for the property. Mrs. McCullum told the Cohens that parking was included. (N.T. p. 92) The plaintiffs' first offer was for $100,000 and their second offer of $110,000 was accepted. (N.T. p. 75).

The agreement of sale only listed the street address for the house. The agreement of sale was drawn up by the broker, Mrs. McCullum. (N.T. Day II, p. 52) The agreement of sale was reviewed by the Cohens' attorney. (N.T. p. 89) No plot plan or drawing was attached to the agreement of sale. Mrs. Cohen discussed the agreement of sale for one hour with her attorney and told him that parking was included in the purchase. (N.T. p. 89) The attorney for the Cohens never inspected or visited the property. (N.T. p. 92)

There was no testimony that Mrs. Cohen ever discussed what was included in the purchase with the seller. She did testify that parking was only discussed with the broker. (N.T., Day II, p. 92)

Mr. Cassway, representing the sellers, the Perot Street Group (a partnership between Joel Cassway, Harvey Blank, Robert Cassway, and Frederick Albert), used his title insurance company to order the real estate description, which he gave to the buyers. (N.T. p. 165) The Cohens met with their attorney and he drew up the deed to the property. (N.T. p. 93) The attorney for the Cohens used the information provided by the title insurance company to prepare the deed. (N.T. p. 13) The deed did not contain either a separate address for the parking space nor did it contain

more than one set of metes and bounds for the property. (N.T. p. 165)

The settlement took place on July 31, 1980 and lasted for approximately five hours. (N.T. p. 134) Although many things were discussed at settlement (i.e. repairs to be made and completed, etc.) there was no testimony from either the buyers or the sellers that parking was ever discussed at the settlement table.

The seller testified that when he signed the agreement of sale he believed that he was not selling the parking. (N.T. p. 148, 150) The seller explained that when the first townhouse of these three sold, the agreement of sale for that property included specific language that two parking spaces were included. (N.T., Day II, p. 163, 181) As a result, the seller believed that because no parking space was mentioned in this agreement, that it was not included. In addition, the seller and the broker both testified that they never discussed whether parking was included in this transaction. (N.T., Day III, p. 54)

This mix-up with the parking space was discovered approximately two months after the sale of 2334 Perot Street. Mrs. McCullum testified that during a conversation with Mr. Cassway about the sale of the remaining house that he said, "I can't believe that we can't sell this house with all these things and two parking spaces." (N.T., Day III, p. 61) Mrs. McCullum said, "You don't have two parking spaces ... you really have one parking space." (N.T., Day II, p. 61) To that Mr. Cassway responded, "The Cohens didn't buy the parking space." (N.T., Day III, p. 61) They then had a long discussion about the problem and what each believed about the parking space.

In summary, the buyer and the broker thought the parking space was included but the seller did not think parking was sold in the transaction. The jury listened to the testimony about the transaction and decided that the seller was aware that the buyers expected to get the parking space.

Subsequently, the jury returned a verdict in favor of appellants in the amount of $10,000. The trial court grant-

ed judgment notwithstanding the verdict for the reason that "there was no evidence presented that the seller Cassway had actual knowledge that the buyers expected to get the parking space." Trial Court's Opinion at 5. This appeal followed.

The standard of review which must be applied has been set forth in the following manner:

> Our standard of review is settled. A judgment n.o.v. should be entered only in a clear case, and any doubts should be resolved in favor of the verdict. *Steward v. Chernicky,* 439 Pa. 43, 266 A.2d 259 (1970). In considering a motion for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, is considered in the light most favorable to the verdict winner. *Miller v. Checker Cab Co.,* 465 Pa. 82, 348 A.2d 128 (1975).

> *Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 349–51, 414 A.2d 100, 103 (1980). Accord *Lokay v. Lehigh Valley Co-op Farmers, Inc.,* 342 Pa.Super. 89, 94–95, 492 A.2d 405, 407 (1985).

According to the trial court, the appellees, the sellers, had to have actual knowledge of the representations which were made by the broker in order to establish liability. This statement of the law, however, appears to be an incorrect one.

The case of *Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. 553, 555, 499 A.2d 282 (1985) sheds some insight into this case. In *Aiello,* a young married couple was interested in purchasing real estate on which the couple intended to build a home and to subdivide the remainder of the land. The couple, appellants in that case, contacted Ed Saxe Real Estate, Inc. who assigned Jones, a real estate sales agent, to assist the Aiellos. The Aiellos became interested in an 87 acre parcel of property which was shown to them by Jones and which was owned by a Mr. Lystad. The Aiellos asked Jones whether the property was suitable for a sewage disposal system. Jones assured the couple that he was familiar with the soil types and that the soils were good and

also assured them that the land was suitable for a conventional sewage system.

Based upon these representations, the couple entered into a sales agreement and purchased the 87 acre tract. A closing was held, and a deed was executed and delivered to the Aiellos. Subsequently, the Aiellos conducted their own tests and discovered that the property was unsuitable for any type of sewage system. Additionally, the Aiellos discovered that a prior sales agreement which had been negotiated by Saxe had not been consummated due to the failure to pass the percolation tests. Our supreme court stated that "Saxe's scienter of his agent's misrepresentation is not necessary in order to hold Saxe liable to Appellants." *Id.*

Our Supreme Court also elaborated and said:

"Few legal propositions have been more thoroughly discussed by our Court than those concerning principals and their agents. Out of that considerable body of case law emerges a well-defined rule concerning the vicarious liability of a principal for the misrepresentations of his agent, and the public policy underlying it.

"These cases instruct us that a principal is liable to *third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and misfeasances of his agent committed within the scope of his employment even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment. Bachman v. Monte,* 326 Pa. 289, 192 A. 485 (1937); *Freedman v. Providence Washington Ins. Co.,* 182 Pa. 64, 37 A. 909 (1897); *DeTurck v. Matz,* 180 Pa. 347, 36 A. 861 (1897); *McNeile v. Cridland,* 168 Pa. 16, 31 A. 939 (1895); *Independent Bldg. & Loan Assn. v. Real Estate Title Ins. & Trust Co.,* 156 Pa. 181, 27 A. 62 (1893); *Griswold v. Gebbie,* 126 Pa. 353, 17 A. 673 (1889); *Brooke v. New York, L.E. & W.R.R.,* 108 Pa. 529, 1 A. 206 (1885); *Erie City Iron Works v. Barber and Co.,* 106 Pa. 125 (1884); *Custar v. Titusville Gas & Water Co.,* 63 Pa. 381 (1869); *Shelhamer*

*v. Thomas,* 7 Serg. & R 106 (1821); *Phoenix Insurance Co. v. Pratt,* 2 Binn. 308 (1810); see also, Restatement of Agency, §§ 257, 258.

"This rule of liability is not based upon any presumed authority in the agent to do the acts, but on the ground of public policy, that it is more reasonable that when one of two innocent persons must suffer from the wrongful act of a third person, that the principal who has placed the agent in the position of trust and confidence should suffer, rather than an innocent stranger. *Erie City; Brooke; Griswold; Cairns v. Pepper,* 133 Pa. 114, 19 A. 336 (1890); *Haworth v. Truby,* 138 Pa. 222, 20 A. 942 (1890); *Independent B & L Association; McNeile; DeTurck; Brooke; Bachman.*

"This result can be reached similarly on the familiar ground that when an agent exceeds his authority, his principal cannot benefit of his act and at the same time repudiate his authority. He must take the benefit to be derived from the transaction subject to his agent's fraud. *Erie; Griswold; Freedman; McNeile; Williams v. Kerr,* 152 Pa. 560, 25 A. 618 (1893); *Wheeler v. Wilson Mfg. Co. v. Aughey,* 144 Pa. 398, 22 A. 667 (1891); *Penn Natural Gas Co. v. Cook,* 123 Pa. 170, 16 A. 762 (1889). *Hughes v. First National Bank,* 110 Pa. 428, 1 A. 417 (1885); *Jones v. National Bldg. Assn.,* 94 Pa. 215 (1880); *Mundorff v. Wickersham,* 63 Pa. 87 (1869); *Musser v. Hyde,* 2 Watts & S, 314 (1841).

"Superior Court's reliance on its line of cases (*Shane v. Hoffmann,* 227 Pa.Superior Ct. 176, 324 A.2d 532 (1974); *Littler v. Dunbar,* 166 Pa.Superior Ct. 271, 70 A.2d 365, reversed on other grounds, 365 Pa. 277, 74 A.2d 650 (1950)), which were cited as authority for the proposition that scienter is required on the part of the principal at the time the agent makes the misrepresentation were wrongly decided and are based on misreadings of our earlier cases. In *Littler,* a case involving an action in fraud and deceit brought by purchasers of real estate agent against the real estate and his broker, it is true that we approved Superior Court's conclusion that proof of scienter on the part of the

principal was essential to finding liability against the principal, but the conclusion was based on a misreading of our earlier cases, *Keefe v. Sholl*, 181 Pa. 90, 37 A. 116 (1897) and *Freyer v. McCord*, 165 Pa. 539, 30 A. 1024 (1895). Both those cases in turn refer back to *Griswold v. Gebbie*, 126 Pa. 353, 17 A. 73 (1889), as authority for the proposition that scienter of the misrepresentation is required and here lies the source of the problem.

"*Griswold* involved a suit brought by purchasers of real estate (Mr. and Mrs. Gebbie) against the grantor (Mrs. Griswold) for the fraudulent misrepresentations of her brother-in-law, Mr. John Griswold, her agent. These statements induced the Gebbies to purchase Mrs. Griswold's property. At Mr. Griswold's direction, the property was advertised by circular as consisting of nearly seven acres and when the Gebbies viewed the property, Mr. Griswold verified to them that the property consisted of seven acres. Based on his representations, the Gebbies purchased the property for $23,000.00.

"Nearly five years after the Gebbies purchased the property, a survey of the land became necessary and the true acerage was determined to be 4.2 acres. The Gebbies brought suit against Mrs. Griswold, for her brother-in-law's misrepresentation and were successful, receiving a verdict in their favor for $3,640.00.

"Mrs. Griswold appealed to this Court arguing that there was no evidence showing that Mr. Griswold's statements were made within the scope of his authority, as her agent, or that his statements were sufficient to show that Mr. Griswold knew the statements to be false or deceitful. In rejecting her claims, the Court, speaking through Mr. Justice Mitchell, made clear that scienter must not only be alleged, but proved. But we there were referring to the requirement that the agent's knowledge that his statements were false or recklessly asserted in ignorance of fact had to be established. It was scienter of the agent and not the principal that was crucial. Accordingly, it was stated that 'scienter must not only be alleged, but proved, and the jury

must be satisfied that the defendant (agent) made a statement knowing it to be false, or with such conscious ignorance of its truth, as to be equivalent to a falsehood.' (Emphasis added.) *Griswold*, 126 Pa. at 363, 17 A. 73.

"We specifically found untenable Mrs. Griswold's argument that she could not be liable for the statements of her agent:

*Where, as here, the misstatement is made by advertisement, and by descriptive circular, is repeated at least twice orally in response to the direct question of the intended purchaser, and is altogether unexplained by the person making it, though his principal and those connected with him in the transaction are shown to have been absolutely ignorant on the subject,* we cannot say that there was not a prima facie case to go to the jury. *Griswold*, 126 Pa. at 365, 17 A. 73. (Emphasis added).

"In so ruling, the court was only reaffirming the general rule that a principal is responsible for the misrepresentations of his agent made within his authority. In *Freyer* and *Keefe*, however, *Griswold* was misapplied and recovery against the principals was denied because proof of their knowledge of their agent misrepresentations was lacking. As can be seen, *Griswold* did not require scienter on the part of the principal and it follows then that *Freyer*, *Keefe* and those cases citing *Freyer* and *Keefe*, were wrongly decided and are now expressly disapproved.

"Today we reaffirm the longstanding and widely held rule of law that a principal is liable to innocent third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances of his agent committed in the course of his employment,[*] although the principal did not authorize, justify or participate in, or indeed know of, such misconduct, or even if he forbade the acts or disapproved of them.[**]

"To hold otherwise is to violate public policy and permit the person who held out his agent as worthy of trust and confidence, to escape liability for his agent's deceits and

frauds, while at the same time reaping the fruits of his agent's fraud, all at the expense of an innocent third party. Such a holding would be contrary to natural justice and common honesty.[***]

[*] The following cases from our sister states stand for the proposition that principals are bound by their agents' misrepresentations made within the scope of their employment:

Alabama, *Brennen v. Kent*, 206 Ala. 561, 90 So. 790 (1921); Arkansas, *Vaught v. Paddock*, 98 Ark. 10, 135 S.W. 331 (1911); Connecticut, *Kiss v. Kahm*, 132 Conn. 593, 46 A.2d 337 (1946); Delaware, *Webster v. Palm Beach Ocean Realty Co.*, 16 Del.Ch. 15, 139 A. 457 (1927); Florida, *Phifer v. Steenburg*, 66 Fla. 555, 64 So. 265 (1914); Georgia, *Puckett v. Reese*, 203 Ga. 716, 48 S.E.2d 297 (1948); Hawaii, *Wong Chan v. Ah Yong*, 9 Haw. 346 (1893); Idaho, *Oregon Mortgage Co. v. Renner*, 96 F.2d 429 (1938) (CA 9th) Idaho; Kentucky, *Railey v. Roberts*, 33 Ky.L.R. 221, 109 S.W. 903 (1908); Minnesota, *Lang v. Merbach*, 96 Minn. 431, 105 N.W. 415 (1905); Mississippi, *Alexander v. Meek*, 132 Miss. 298, 96 So. 101 (1923); Montana, *McCarty v. Lincoln Green, Inc.*, 620 P.2d 1221 (1980, Mont.); Nebraska, *Hoock v. Bowman*, 42 Neb. 80, 60 N.W. 389 (1894); Nevada, *Bank of Nevada v. Butler Aviation*, 96 Nev. 763, 616 P.2d 398 (1980); New Jersey, *Chapin v. Kreps*, 106 N.J.L. 424, 147 A. 398 (1929); North Carolina, *Ebbs v. St. Louis Union Trust Co.*, 199 N.C. 242, 153 S.E. 858 (1930); Oklahoma, *Howe v. Martin*, 23 Okla. 561, 102 P. 128 (1909); Tennessee, *Caughron v. Stinespring*, 132 Tenn. 636, 179 S.W. 152 (1915); Utah, *Dugan v. Jones*, 615 P.2d 1239 (1980); Vermont, *Greenough v. U.S. Life Ins. Co. of City of New York*, 96 Vt. 47, 117 A. 332 (1921); West Virginia, *Johnson v. Norfolk and W. Ry. Co.*, 82 W.Va. 692, 97 S.E. 189 (1918); Wyoming, *Wilson v. Rogers*, 1 Wy. 51 (1872).

[**] These cases from our sister states like the case *sub judice* hold that a principal is responsible for his agents' misrepresentations regardless of the principal's knowledge that the statements had been made:

California, *Newcomb v. Title Guarantee & Trust Co.,* 131 Cal.App. 329, 21 P.2d 456 (1933); Illinois, *Handelman v. Arquilla,* 407 Ill. 552, 95 N.E.2d 910 (1950); Kansas, *Rush v. Leavitt,* 99 Kan. 498, 162 P. 310 (1917); Louisiana, *Henderson v. Western Marine & Fire Ins. Co.,* 10 Rob. 164 (1845) (LA); Maryland, *Tome v. Parkersburg Branch R. Co.,* 39 Md. 36 (1873); Massachusetts, *Howe v. Johnson,* 236 Mass. 379, 128 N.E. 634 (1920); Michigan, *People v. Genther,* 218 Mich. 289, 187 N.W. 241 (1922); Missouri, *Laird v. Keithley,* 201 S.W. 1138 (Mo.) (1918); New Mexico, *Thrams v. Block,* 43 N.M. 117, 86 P.2d 938 (1938); Ohio, *McMahon v. Spitzer,* 29 Ohio App. 44, 163 N.E. 37 (1928); Oregon, *Copeland v. Tweedle,* 61 Or. 303, 122 P. 302 (1912); South Dakota, *Rasmussen v. Reedy,* 14 S.D. 15, 84 N.W. 205 (1900); Texas, *Stowe v. Wooten,* 62 S.W.2d 67 (Tex. Com.App.) (1933); Virginia, *Jefferson Standard Life Ins. Co. v. Hedrick,* 181 Va. 824, 27 S.E. 198 (1943); Wisconsin, *Law v. Grant,* 37 Wis. 548 (1875).

[***] Other states which have adopted this principle include:

Alaska, *Miller v. Sears,* 636 P.2d 1183 (1981); Arizona, *Light v. Chandler Improvement Co.,* 33 Ariz. 101, 261 P. 969 (1928); Colorado, *Mayo v. Wahlgreen,* 9 Colo.App. 506, 50 P. 40 (1897); Indiana, *Wolfe v. Pugh,* 101 Ind. 293 (1885); Iowa, *Ellison v. Stockton,* 185 Iowa 979, 170 N.W. 435 (1919); ʻMaine, *Rhoda v. Annis,* 75 Me. 17 (1883); New Hampshire, *Concord Bank v. Gregg,* 14 N.H. 331 (1843); New York, *Bennett v. Judson,* 21 N.Y. 238 (1860); North Dakota, *Bunting v. Creglow,* 40 N.D. 98, 168 N.W. 727 (1918); Rhode Island, *Cohen v. Goldman,* 85 R.I. 434, 132 A.2d 414 (1957); South Carolina, *Byrn v. Walker,* 275 S.C. 83, 267 S.E.2d 601 (1980); Washington, *Nelson v. Title Trust Co.,* 52 Wash. 258, 100 P. 730 (1909)." *Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. at 558–563, 499 A.2d at 285–288.

In the instant case, it is undisputed that the real estate agent, Mary McCullum, had represented to the appellants, the buyers, that the parking space was to be included along

with the sale of the townhouse. The record is clear on this point when the real estate agent testified as follows:

[Appellant's Attorney]

Q. Now, isn't it true at all times you represented to the Cohens that parking was included with 2334 Perot Street?

[McCullum]

A. Yes.

Q. And isn't it true that at all times, you were led to believe by Mr. Cassway and his partners that parking was included with 2334 Perot Street?

A. At all times, I believed that was the case, yes.

Q. And isn't it true that you prepared the agreement of sale, that parking was included in that agreement of sale?

A. Yes.

Q. And isn't it true that you went to settlement and at the time of settlement, believed that the Cohens were getting parking?

A. Yes.

Q. And isn't it true that Mr. Cassway—or neither Mr. Cassway nor any of his partners ever suggested to you before settlement that parking was not going to be included? They never told you that?

A. No, they didn't.

Q. And they never told you they were going to withhold transferring parking, did they?

A. No.

Q. And isn't it true it came as a shock to you a month or two or so later, after the settlement and after the Cohens moved in, that Mr. Cassway now wanted to charge $10,000 for parking?

A. I was surprised that the Cohens had not been deeded the parking.

Q. And isn't it true that it wasn't until several months after settlement, until after the Cohens moved in, that

Mr. Cassway even suggested to you that he withheld parking or that parking was not included?

A. I found out sometime after their settlement that parking was not included.

Q. Now, Mr. Cassway was at settlement; is that correct?

A. Yes.

N.T. 3/26/84 at 13–14.

■ On these facts, a jury could reasonably conclude that the agent was negligent or otherwise harbored under a mistake which was within the scope of her authority and which induced the appellees to purchase the property. There is no question that the real estate agent was hired by the sellers to show the property.

Additionally, we recognize that

Extrinsic evidence is generally admissible for the purpose of showing that by reason of a mutual mistake, a written instrument does not truly express the intention of the parties. *McFadden v. American Oil Company,* 215 Pa. Super. 44, 52, 257 A.2d 283, 287 (1969).

■ In this case, the trial court's granting of a judgment notwithstanding the verdict was improper because, contrary to the trial court's theory, proof of scienter on the part of the principal at the time of an agent's misrepresentation is not required to hold the principal liable for damages. *Aiello v. Ed Saxe Real Estate, Inc., supra.*

Because final judgment was not entered on the jury's verdict, we must remand the matter. At the trial court level, the court did not address the questions which were raised by appellants concerning the damages issue because of its finding that scienter by the principal was required. Because we have concluded that this conclusion by the trial court was in error, we remand for the trial court to consider the appellants' remaining arguments. The judgment n.o.v. entered by the trial court is reversed, and the matter is

remanded to the trial court to consider the remaining issues in appellants' post-trial motions.

Jurisdiction is relinquished.