# CHARLESTON.

## CORA L. JOHNSON v. NORFOLK & WESTERN RAILWAY CO.

Submitted October 1, 1918.   Decided October 8, 1918.

1. FALSE IMPRISONMENT—*Unlawful "Arrest"—Words and Conduct of Officer and Defendant.*

   An unlawful arrest constituting false imprisonment may be effected without manual seizure or touching of the subject of the arrest. Such words and conduct of a known officer as give reasonable ground for belief on the part of the subject, that the officer has present intention to make the arrest, and submission on the part of the subject, in good faith and under the belief that he has been arrested or will be arrested immediately, are sufficient. (p. 697).

2. SAME—*Unlawful Arrest—Question for Jury.*

   Intention and reasonable ground of belief, constituting the chief elements of an arrest so effected, are largely questions of fact for jury determination, in an action for damages for false imprisonment, founded upon such an arrest. (p. 698).

3. SAME—*Release—Effect.*

   If, in such case, the officer after having made the arrest, tenders the subject permission to go at large temporarily and return for trial, the permit so tendered is in the nature of an offer of parole which the subject is not bound to accept and which does not amount to a release or an abrogation of the arrest. Rejection of such offer and an accepted submission leave the arrest in full force. (p. 698).

4. PRINCIPAL AND AGENT—*Acts of Agent—Liability.*

   A principal is liable for wrongful acts of his agent, incidentally done in the exercise of the latter's authority and within the scope thereof, and working injury to a third party.

5. FALSE IMPRISONMENT—*Wrongful Arrest by Agent.*

   A railroad company is liable for an unlawful arrest directed or induced by its station agent, as a means of effecting his wrongful detention of a passenger's baggage. (p. 699).

6. SAME—*Unlawful Arrest—Instigation—Evidence.*

   In such case, words and conduct on the part of the agent fairly tending to prove co-operation with the officer in the making of the arrest or encouragement thereof, justify a finding of instigation of the arrest, on his part. p. 699).

82 W. Va.

7.  SAME—*Right of Action—Malice—Want of Probable Cause.*
    Neither malice nor lack of probable cause is an essential element
    of a right of action for false imprisonment; and, if both false
    imprisonment and malicious prosecution are alleged and the for-
    mer proved, in an action, the existence of probable cause for the
    prosecution, if disclosed, constitutes no ground for a peremptory
    instruction to find for the defendant, nor for a motion to set aside
    a verdict for the plaintiff.  (p. 700).

Error to Circuit Court, Mingo County.

Action by Cora L. Johnson against the Norfolk & Western
Railway Company.  Judgment for plaintiff, and defendant
brings error.

*Affirmed.*

*Holt, Duncan & Holt,* and *Theodore W. Reath,* for plain-
tiff in error.  *Strother, Taylor & Taylor,* and *Wiles & Bias,*
for defendant in error.

POFFENBARGER, PRESIDENT:

The principal inquiries arising upon this writ of error to
a judgment for $1,000.00, obtained in an action for damages
for an alleged false arrest and malicious prosecution, are,
(1), whether the evidence tends to prove such facts and cir-
cumstances as legally justified the jury in finding the plain-
tiff had been arrested; and, (2), if so, whether the acts and
conduct of the defendant's station agent were of such char-
acter as to make out a case of participation on the part of
the defendant, in the arrest, or of instigation thereof.

The controversy had its origin in the accidental breaking
of a quart bottle filled with whiskey, in one of the plaintiff's
two suit cases delivered to the defendant at its station at the
city of Williamson, Mingo County, and there checked by it,
as personal baggage of the plaintiff to be carried to another
station known as Davy, McDowell County, from which point
she intended to go on a visit to her mother in Wyoming
County.  A train manifest delivered with the baggage to the
station agent at Davy, by the baggage-man and signed by
the baggage-master at Williamson, said: "This suit case
fell from the top of a trunk and whiskey run out of same as
if though it was full of whiskey."  On her arrival at Davy,

the plaintiff, without having called for her baggage, went to
a hotel at which she intended to spend the night, and sent
the porter to the station with her checks for the baggage.
In a few minutes, he returned and reported the refusal of
the agent to surrender it. Thereupon, she went with the
porter to the station and demanded it. Fearing delivery of
the baggage, with knowledge that it contained liquor, might
be an act in violation of his duty or orders, or one subjecting
the railroad company or himself to criminal liability, the
agent had wired his superior officer for instructions as to
what to do with it, and had not as yet had any response to
his telegram, nor did he receive one until the next day at
about noon and after completion of the transactions relied
upon as constituting a false arrest or imprisonment. When
it came, it was unsatisfactory in another respect. It merely
asked the agent what he had done with the baggage. Upon
non-compliance with the plaintiff's demand for her baggage,
a controversy arose between her and the agent, in the course
of which she expressed her intention to call an attorney from
Williamson for advice, whereupon he either threatened to
call an officer, or she requested him to call him, after having
been advised by him that there was one in town. As to this
there is a conflict in the testimony. However the suggestion
may have arisen, he sent a messenger for the officer, who re-
turned without him, being unable to find him. She says he
then called the officer by telephone. Soon afterwards, he
came in, as he and the agent say, without request from any
person and to ascertain the cause of the noise he had heard
the plaintiff making in the station. Negotiations then took
place between the plaintiff and him. After having examined
the baggage and discovered evidence of the presence of
whiskey, on one of the suit cases, he advised the agent not
to deliver it, and the plaintiff says he then told her she was
going to Welch with him the next morning at eight o'clock.
Welch was the county seat of the county. She further says
the agent was not disrespectful to her until after Chinault,
the officer, came in, and then, as she expressed it, "He
seemed to be terrible set up, you know, and mad and had no
reason about him, and told me I was no lady or I wouldn't

be carrying whiskey.'' Communications were opened by
telephone with A. C. Hufford, a justice of the peace, at
Welch. The plaintiff first attempted to call him up, but
was unable to use the telephone in the station. Then she
went to the central telephone station, called him up, told
him the circumstances and asked him to direct or request the
agent to let her have her baggage. He promised to do so, ac-
cording to her testimony, and immediately called Boyd, the
agent, and talked to him, while she listened to the conversa-
tion. Instead of complying with his promise, he told the
agent he had her, the plaintiff, just where he wanted her and
to take her clothing out of the suit cases and give it to her,
and to examine them closely to see whether she had any more
whiskey. She having informed the justice that Davy was.
not her destination and that she was going from that point,
down into Wyoming County to visit her mother, on the next
morning, he directed the agent to retain the suit cases and
let her take her clothing and added that on her return, he
would prepare a written instrument to be signed by her, re-
leasing him. At this point, in order to let the justice know
she had heard these directions, she broke in on the conversa-
tion, saying ''Squire why can't I have my suit cases now.''
Somewhat angered, she returned to the station and there was;
further controversy between her and Chinault and Boyd, in
the course of which she says Chinault said ''I'm going to
take you to Welch at eight o'clock in the morning,'' and, in
reply to her protest of his lack of authority, ''I can, and I
will arrest you and take you before Squire Hufford in the
morning.'' He says he threatened to arrest her for her
boisterous conduct. She admits he did not lay hands upon
her, but she says she deemed herself to be under arrest and
waited to see what was to be done with her, and, in the ab-
sence of any further procedure, left the station and went to
the hotel for the night, the hour being somewhat late. On the
next morning, she went to the station, bought a ticket for
Welch and boarded the train for that place. At the same
time, Chinault appeared, advised her that she need not go to
Welch then and could go on and visit her mother and submit
herself to trial on her return; but he too boarded the train,

carrying her suit case in which the liquor had been found, and went to Welch. At the justice's office, a warrant was issued on the complaint of Chinault. She protested her innocence and called an attorney. Both she and the attorney say the justice informed them that he would terminate the matter by the interposition of a fine of one hundred dollars and remit it, after she had demanded an appeal. Immediately afterwards, she was allowed to go and take her suit case with her. On opening it at the attorney's office, nothing was found in it except some of her clothes and some broken glass, not more than the quantity requisite for one bottle. It had originally contained two quarts of whiskey besides the clothing. Not "To be out done," as she puts it, she went from Welch to Pocahontas, Va., procured there two other quarts of whiskey, came back to Davy, obtained her other suit case, staid all night there and then went on to visit her mother. That visit covered a period of two or three weeks and, some time after her return to her home at Williamson, officers came with a commitment, to take her to jail for a period of thirty days. She convinced them of her inability to go and then obtained an appeal from the judgment, which the Circuit Court reversed, after having sustained a motion to quash the warrant on the ground that it charged no offense.

Chinault denies that he threatened to arrest the plaintiff, that he had any intention to arrest her, that he told her she would have to go to Welch, that he took her suit case with him to Welch and that he made any complaint. Boyd denies that he called Chinault of his own volition, protests that he called him at the request of the plaintiff and insists that he did not, in any manner, direct her to be arrested. Hufford says he does not know whether Chinault brought the suit case to his office or not. The plaintiff says he did, Boyd says he took it from the station and plaintiff's attorney says it was at the office of the justice and taken from that place to his office. The justice issued a warrant in Chinault's presence, reciting that it was issued upon complaint made by him. Of course, the questions of varacity involved here and the facts were for jury determination.

All authorities agree that manual custody or restraint is not essential to the effectuation of an arrest, if the person claiming to have been arrested submits to a manifestation or claim of authority to make the arrest and an expression of intent to execute such authority. "In order to constitute a case of false imprisonment it is essential that there should be some direct restraint of the person, but to constitute 'imprisonment', in the sense in which the word is here used, it is not necessary that there should be confinement in a jail or prison. Any exercise of force, or express or implied threat of force, by which in fact any person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. So if an officer tells a person that he is under arrest, and he thereupon submits himself to the officer, going with him and obeying his orders, such person is deprived of his liberty, and if the act of the officer is unlawful it is false imprisonment. While actual force is not necessary, it is generally held essential that the conduct of the person complained of must show that force will be used to detain the plaintiff, if necessary, or that the person detaining him does so by some legal authority." 11 R. C. L. 793. "An arrest is not consummated until there has been a taking of possession of the person by manual caption or otherwise, but the requisite control may be assumed without force, and in any manner by which the subject of the arrest is brought within the power or control of the person making it. Nor is manual touching necessary, where the subject of the arrest submits thereto, or is otherwise actually subjected to restraint." 5 C. J. 386. To the same effect, see 2 Am. & Eng. Enc. L. 836, and 5 Am. & Eng. Enc. L. & P. 446.

In all cases in which there is no manual touching or seizure, nor any resistance, the intentions of the parties to the transaction are very important. There must have been intent on the part of one of them to arrest the other, and intent on the part of such other to submit, under the belief and impression that submission was necessary. *Searles* v. *Viets,* 2 Thompson & C. (N. Y.), 224; *Lowry* v. *Chase,* 100 Mass., 79; *Horner* v. *Patten,* Bullars N. P. 62b; *Pocock* v. *Moore,* R. &

M. 321; 7 L. R. A. N. S. 576; *Garnier* v. *Squires,* 62 Kan. 321; *Jones* v. *Jones,* 13 Ired, (N. C.), 448; *State ex rel. Lawrance* v. *Buxton,* 102 N. C. 129; *Pike* v. *Hanson,* 9 N. H. 491; Vorhees, Arrest, sec. 70.

When the intention with which an act was done depends upon inferences arising from conduct, it is manifestly a question of fact, falling within the province of the jury for determination, and the intention of the parties, as an element or factor in an issue of arrest or no arrest, constitutes no exception to the rule. *Jones* v. *Jones,* 13 Ired. (N. C.), 448; *Dunlevy* v. *Wolferman,* 106 Mo. App. 46. The jury could have found from the evidence that Chinault told the plaintiff he would arrest her and made her believe she was under arrest, although he did not say so; that she believed she was under arrest; that Chinault made a complaint on which a warrant was issued for her arrest; that he took the evidence of her supposed guilt to the office of the justice; that she believed he accompanied her to Welch, as her custodian, although he says he did not and she admits he did remain near her on the train; and that he considered her under arrest, notwithstanding the permission he gave her to go on her contemplated visit, for this permit was accompanied by the statement or intimation that she would have to undergo a trial on her return. He denies having said anything to her at the station on the morning of the trip to Welch. If he did not, the case is much stronger against him, for he was there boarding the train with her suit case and going in the direction of the office of the justice to which he had told her he would take her. The leave granted for the visit did not nullify the arrest, if there was one. It was a mere offer of a parole which she was not bound to accept. Although the officer does not accompany the prisoner to the magistrates office, there may be a constructive arrest and imprisonment within the meaning of the law. *Searl* v. *Viets,* 2 Thomp. & C. (N. Y.), 224; *Herring* v. *State,* 3 Tex. App. 108; *Martin* v. *Houck,* 141 N. C. 317. She knew Chinault was an officer and that he and the justice of the peace deemed her guilty of an offense. In our opinion, the admitted facts and those

the jury were warranted in finding from the conflicting evidence, justified the finding of an arrest.

Nothing in the statute, as it then was, made the plaintiff's act unlawful. Under the statute then in force, she could lawfully carry as much as two quarts of liquor for her personal use, without a label on the container. Common carriers could not transport liquors for hire, but nothing in the statute made the act of checking personal baggage containing liquors not in excess of two quarts, criminal. Besides, the act had not been committed in the presence of the officer and he had no warrant for her arrest. It is not pretended in argument, that there was any legal justification of the arrest.

The evidence affords an ample basis for the finding that the defendant's agent instigated or caused the arrest. Whatever his motive may have been, he disclosed to the officer the fact constituting the occasion of it. Having no right to withhold the baggage, he not only retained it against the plaintiff's will but permitted it to go into the hands of the officer, as evidence of right of arrest and means of prosecution. This circumstance tends to prove the plaintiff's charge of connivance on his part with the officer, or direction to make the arrest. He had been advised that the plaintiff was guilty of an offense and she swears he seemed to be directing Chinault. To make the defendant liable for his acts in this connection, he must have been acting within the scope of his authority, of course, but the jury were warranted by the evidence, in finding he caused the arrest as a means of retaining his hold upon the baggage. If the arrest was an incident of his wrongful retention of the baggage, under orders of the defendant, it is obviously liable, for the custody and proper handling of the baggage was within his authority, and his wrongs done in the execution of such authority are chargeable to his principal. The plaintiff was rightfully in the station, rightfully demanding her property, in consequence of the agent's wrongful refusal to deliver it. In conferring upon its agent authority to handle baggage, the defendant necessarily empowered him to determine questions of right as to delivery and the means of resisting what he deemed wrongful demands for delivery; and even though

he did wrongful acts in the execution of these powers, which the principal might not have authorized specifically, if they had been brought to its attention, the rule *respondeat superior* applies. *Chicago etc. Ry. Co.* v. *Bayfield*, 37 Mich. 205; *Higgins* v. *Watervliet etc. Co.*, 46 N. Y. 23; *Drew* v. *Peer*, 93 Pa. St. 234: *Jardine* v. *Cornell*, 50 N. J. 485; *Dickson* v. *Waldron*, 135 Ind. 507. Besides, the agent had had instructions of some kind, respecting the carrying of liquors, which he may have misinterpreted.

Although the declaration charges both false imprisonment and malicious prosecution, the trial proceeded for the most part, on the theory of liability on the former charge, in which the doctrine of probable cause usually has no place. None of the instructions given for the plaintiff invoked that doctrine. Two instructions given for the defendant mention the other charge, but neither of them sets up the alleged conviction as being conclusive of the existence of probable cause, nor refers to it in any way. Hence, the doctrine enunciated in *Haddad* v. *C. & O. Ry. Co.*, 77 W. Va. 710, was not invoked in the trial. It does not sustain the defendant's overruled request for a peremptory instruction to find for the defendant, nor the motion for a new trial, because the evidence sustains the charge of false imprisonment of which want of probable cause is not an essential element.

Perceiving no error in the judgment, we will affirm it.

*Affirmed.*