STATE EX REL. EUNICE MULLINS, *Admx., etc. v.* HENRY ALBERT MCCLUNG *et al.*

(No. 9200)

Submitted September 23, 1941. Decided November 18, 1941.

*Fitzpatrick, Brown & Davis,* for plaintiffs in error.
*Smith & Smith,* for defendant in error.

KENNA, PRESIDENT:

This action of debt was brought in the Circuit Court of Lincoln County by the State of West Virginia at the relation of Eunice Mullins, administratrix of the estate of Dennis S. Mullins, against Henry Albert McClung and the Fidelity & Casualty Company of New York for the purpose of recovering upon McClung's official bond as

a member of the Department of Public Safety, for the wrongful death of plaintiff's decedent. From a judgment based upon a verdict for $3,500.00, the full penalty of the bond in question, this writ of error was granted.

The alleged ground of recovery is a violation of the condition of the bond to well and faithfully discharge all the duties of the office of a member of the Department of Public Safety by unlawfully striking plaintiff's decedent with a mace while on highway ten near the boundary line between the counties of Lincoln and Logan, thereby causing his death. The sufficiency of the declaration is not questioned, the issue having been submitted to the jury upon the defendant's plea of not guilty.

The plaintiff's testimony is to the effect that Dennis Mullins, Manford Adkins and Charley Brewster left their home in Ferrellsburg on the afternoon of Sunday, November 5, 1939, in Mullins' car and drove to Big Creek, Mullins driving with Adkins in the middle and Brewster on the outside of the front seat. On their return, when nearing Tony, and while traveling at a speed not exceeding forty miles an hour, they observed trooper McClung following from fifty to one hundred yards behind. When they realized from the sound of the horn of McClung's car that he was an officer, they promptly stopped, but in the meantime, McClung had passed them and had stopped his car resting diagonally across the road. Mullins had been drinking and was "about half drunk." After both cars had come to a stop on the highway, McClung got out of his car, went back to the Mullins car and told Mullins to get out. As Mullins was getting out, having opened the door with the intention of doing so, McClung struck him with the mace on the lower right side of his face, causing his mouth to bleed. There was no altercation between the officer and the occupants of the Mullins car, nor was there any refusal to submit to arrest.

The testimony of the defendant is that on that afternoon, trooper McClung in uniform was patrolling State Route Ten in a 1938 Chevrolet sedan; that when near the Lincoln County line, he observed a car two or three car lengths ahead of him swerve into the path of a car coming

in the opposite direction. McClung undertook to stop the swerving car by driving abreast of it on the left and blowing his horn several times, but in order to prevent his doing so, the driver in the Mullins car pulled to the left side of the highway to keep him from passing. McClung made several efforts to pass the Mullins car, and in making them observed that the person sitting in the middle of the seat turned a number of times and looked in his direction. He finally succeeded in getting by the Mullins car after they had crossed the Lincoln County line and had traveled between a mile and a half and two miles. After McClung passed, he pulled ahead about fifty yards and cut his car directly across the road, stopping it. Being unable to pass, the Mullins car stopped in the center of the road. McClung left his car, went back to the Mullins car and opened the door, ordering Mullins to get out of the car. Mullins made no effort to obey. McClung, having the door open, reached in, took hold of him, and when Mullins resisted, struck him with the mace. McClung states that he had the mace in his hand due to the fact that he was taking into custody three men he believed to be drunk. There is little conflict in the proof as to actual happenings thereafter.

McClung lodged Mullins in the Logan County jail that night, informing the jailer that he was injured and required medical attention. Monday morning, he took Mullins to State Police Headquarters and had him fingerprinted and also had him arraigned before a justice of the peace at Chapmansville, in the district where he first observed Mullins driving while drunk, on a charge of drunken driving to which Mullins at that time pleaded not guilty. The accused being unable to furnish bond pending a hearing, the officer took Mullins before a justice of the peace in Lincoln County and procured a warrant upon the charge of resisting arrest. Thereupon, Mullins asked McClung to drop the charge of resisting arrest, admitted that he had been driving while drunk and was taken back to Logan County where he pleaded guilty to the first charge and was sentenced to the Logan County jail.

On Monday, November the sixth, the day after Mullins was put in the Logan County jail, and the following day, he was examined and treated by Drs. Hamilton and Lawson, the former expressing the opinion that his jaw was not broken. On November the twelfth, Mullins was released from jail for a reason that the record does not make clear. On November the fifteenth, Mullins was examined by Dr. Gilkinson, a dentist at Logan, his right jaw being considerably swollen. He was then advised that his jaw was broken, and that he should see Dr. Lillie, a dental specialist in Huntington. Nothing more is disclosed by the record concerning medical attention until the latter part of November when Dr. Walden examined Mullins and advised him to go to a hospital. On November the thirtieth, Dr. Lillie saw Mullins at the St. Marys Hospital in Huntington, removed infected bone, set his jaw bone and wired it in position. Mullins remained there until December the third with a badly infected fracture of the right jaw bone. On December the third, he left the hospital without being formally released and returned to his home. On December the twelfth, he went back to Huntington and called on Dr. Lillie, who opened the abscess in his jaw, drained it and was at that time of the opinion that there was no systemic infection. Nothing more occurred until around December the sixteenth. At that time Mullins had undergone a change in color and sent for Dr. Ferrell, practicing at Ferrellsburg, who advised him to go to bed and was of the opinion that he was suffering from "pneumonia fever". Dr. Ferrell removed the wiring in his jaw bone in order to permit him to breathe more easily and to relieve the swelling in his tongue and throat. Mullins died December the twentieth.

It seems clear that with contradictory statements before the jury concerning the circumstances under which Mullins was struck and injured, the verdict will not be disturbed in the event the plaintiff's testimony would sustain a recovery. In order to do so in this action there are two questions, both of which must be answered in the affirmative and the answers sustained by substantial proof:

(a) Did McClung's conduct, according to plaintiff's testimony, constitute a breach of duty, and (b) was Mullins' death the proximate, as distinguished from the remote, consequence of his conduct?

The arrest of a misdemeanant otherwise lawful may be effected by the use of necessary force, including the use of a club. See the annotation in 3 A. L. R. 1171. But see also, Barber v. Casualty Co., 118 W. Va. 89, 188 S. E. 757, holding that a fleeing misdemeanant may not be lawfully wounded nor killed by an officer. Although driving upon the public highway when drunk is an exasperating assertion of cruel arrogance that our legislature has declared punishable by a maximum fine of one hundred dollars and six months imprisonment for the first offense, it nevertheless remains a misdemeanor. It is agreed that Mullins had been drinking heavily, but there is a wide disagreement between the testimony of the plaintiff and that of the defendant as to the actual happenings. According to the plaintiff, Mullins was obeying McClung's instructions promptly, and was unnecessarily struck while getting out of the car. Unquestionably, this would rest liability upon him. Defendant's theory is that McClung struck Mullins after it became apparent that Mullins and the other two occupants of Mullins' automobile refused to stop after knowing during more than a mile of travel that they were being ordered to do so by an officer, stopped only after the officer had obstructed the road, and, after having refused to leave their car when McClung had opened the door, were either engaged in resisting arrest or were preparing to do so. However, looking at the matter from the defendant's viewpoint, there is still the remaining jury question of whether McClung used more force than was necessary under the circumstances. It therefore would seem that there is sufficient testimony in this record to warrant submitting to the jury the question of whether McClung's conduct constituted a breach of the peace, and, that having been done, the finding of the jury cannot be disturbed for that reason.

As to whether Mullins' death resulted from the blow of McClung, we believe that upon this record there is suf-

ficient proof to sustain an affirmative answer, although, in order to do so, it is necessary to conclude that the blow struck by the defendant was not the only factor causing the development of septicemia. The defendant relies upon the case of *Wingrove* v. *Land Co.*, 120 W. Va. 100, 196 S. E. 563, 116 A. L. R. 1197. In the *Wingrove* case, the plaintiff's decedent had received a very deep cut, probably from a license plate, traceable to the defendant's lack of care, on his arm. The decedent had his wound bound by friction tape without the use of an antiseptic. He saw no doctor until more than twenty-six hours after his injury, and in the meantime had developed an infection due to the dirty bindings he had used. There was no proof showing that death could naturally result from his wound. We held that the intervening conduct of Wingrove, the decedent, rather than the wound, had caused the infection resulting in his death. We think that the *Wingrove* case is clearly distinguishable from the case at bar, because here there is no testimony that Mullins performed any affirmative act which contributed in any way to the development of systemic infection. True, the absence of proper care, under the circumstances, may have entered into the final result. The question of whether Mullins used all means at his command in a reasonably adequate way to overcome the effect of the blow inflicted by McClung, we believe, was properly submitted to the jury, and we see no reason to disturb its finding.

In the case of *Richards* v. *The Riverside Iron Works,* 56 W. Va. 510, 49 S. E. 437, syllabus four reads as follows: "Where, in an action for fatal injury, it becomes a question whether death resulted from the injury, or from disease with which it had become involved, the party causing the injury cannot escape full liability without showing that death must have resulted if the injury had not been done." Here, it seems to be apparent that the injury did become involved with the infection that brought about the death of the decedent, and certainly the weight of the testimony does not indicate "that death must have resulted if the injury had not been done."

The remaining question is whether or not it constituted

error for the trial court to decline to give defendant's instruction number five, which reads as follows:

"The Court further instructs the jury that if you believe from all the testimony in this case that Henry Albert McClung, on the 5th day of November, 1939, was patrolling West Virginia State Route No. 10 in his official capacity of a member of the Department of Public Safety of West Virginia, and observed Dennis S. Mullins driving along said highway in an unlawful manner, it became the duty of Henry Albert Mc-Clung to place said Dennis S. Mullins under arrest and in so doing the said Henry Albert McClung, by law of this State, was permitted to use such force as was necessary in effecting said arrest, and if you believe from the testimony in this case that the said Henry Albert McClung believed it necessary to strike the blow complained of in order to effect the arrest, and that the surrounding facts and circumstances justified him in believing that such striking was necessary, then your verdict should be for the defendants, as the determining factor is not whether the blow was justified or unjustified, but whether Henry Albert McClung believed the striking of such blow was necessary, and had reason to believe that the striking of such blow was necessary."

The plaintiff's objection to this instruction is based primarily upon the fact that its language left McClung free to be the sole judge of the force that was necessary to effect an arrest. However, it will be observed that the belief of the officer concerning the necessary force is, by the instruction, predicated upon "the surrounding facts and circumstances", and that the instruction ends by stating that its conclusion is correct "as the determining factor is not whether the blow was justified or unjustified, but whether Henry Albert McClung believed the striking of such blow was necessary, and had reason to believe that the striking of such blow was necessary."

In effecting an arrest, an officer is presumed to have acted in good faith. The law does not require him to be infallible. He must be a man whose faculty to exer-

cise sound judgment is at least up to the average. It is the duty of the jury to judge whether this be true or not. If it be true, and if a conscientious, understandable mistake has been made by an officer in effecting a justifiable arrest, then there is no liability. If, on the other hand, the officer carelessly or in bad faith under the existing circumstances harms another by the use of force apparently unjustified, it amounts to a breach of duty for which he and the sureties upon his official bond are liable. In *Thompson* v. *Norfolk & Western Railroad Co.*, 116 W. Va. 705, 182 S. E. 880, which involved the wounding of a fleeing felon, the following statement will be found: "The appraisal must be made in the light of pressing circumstances as the officer saw them. *Village of Barboursville ex rel. Bates* v. *Taylor*, 115 W. Va. 4, 174 S. E. 485, 92 A. L. R. 1093; *Davidson* v. *Allam*, 143 Va. 367, 130 S E. 245." There can be no doubt but that the foregoing is the established rule governing the conduct of an officer in arresting either a felon or a misdemeanant. See *State* v. *Dunning*, 177 N. C. 559, 98 S. E. 530, 3 A. L. R. 1166, annotation at page 1170.

We are of the opinion that the instruction under consideration correctly applies the foregoing princple to the circumstances established by the testimony in the case at bar. It rightly leaves it to the jury to decide whether McClung was acting pursuant to an honest belief that the force used was necessary, and that the surrounding facts and circumstances justified the belief that prompted his conduct. Since there were no other instructions dealing with the same principle, the rejection of defendant's instruction number five constituted reversible error, and, therefore, the judgment of the Circuit Court of Lincoln County will be reversed.

*Reversed and remanded.*