The City of McMechen, *etc., ex rel.* Clark Willey

*v.*

Fidelity and Casualty Co. of New York,
New York, *et al.*

(No. 12013)

Submitted September 13, 1960. Decided October 18, 1960.

*S. Robert Reiter,* for plaintiffs in error.

*Handlan, Garden, Matthews & Hess,* for defendant in error.

CALHOUN, JUDGE:

This case involves an action of covenant instituted in the Circuit Court of Marshall County by the City of McMechen, at the relation of and for the use and benefit of Clark Willey, who will be referred to herein as the "plaintiff", against Philip J. Korsnick, a police officer of the City of McMechen, and the surety on his official bond, Fidelity and Casualty Company of

New York. Korsnick and the corporate surety on his official bond will be referred to herein as the "defendants", in accordance with their designation in the trial court.

The purpose of the action on the official bond of the police officer is to recover damages from the defendants for alleged false arrest and false imprisonment of the plaintiff by Korsnick. The case is before this Court on writ of error to the judgment of the trial court, embodied in an order dated June 19, 1959, by which a verdict for the defendants was set aside and a new trial awarded to the plaintiff.

On April 2, 1958, about six o'clock p.m., while on duty as a police officer for the City of McMechen, Philip J. Korsnick was seated in a police car or cruiser which was parked within the municipality. He testified that, as a city police officer, he received weekly from the communications officer of the State Department of Public Safety lists containing the license plate numbers of stolen motor vehicles; that such lists are known as "hot sheets"; that West Virginia license plate number 49-254 for the license year 1957-58 appeared on such hot sheets for a period of months prior to and including April 2, 1958; and that while he was seated in the police cruiser on that date as stated above, he saw a passing automobile bearing such license plate.

Defendant Korsnick testified further that upon noting the passing automobile bearing the license plate number which appeared on the current hot sheet, he started promptly in pursuit, with two red lights on the cruiser flashing and with the siren sounding; and that not until the third attempt did he succeed in driving ahead of the other vehicle and in getting it stopped. It was determined that the automobile in question was being operated by the plaintiff, Clark Willey, a resident of Wheeling, West Virginia, who was then a stranger to the police officer.

At the request of Korsnick the plaintiff displayed his operator's license and registration card. Korsnick

testified that the license plate had the appearance of having "been tore off an automobile", and that, in his judgment, the appearance of Willey did not correspond with the description appearing on the operator's license. At the officer's request the plaintiff, operating his own automobile, followed the police cruiser to the city building. Upon arrival at the city building, at Korsnick's request, the plaintiff again produced his operator's license and registration card. Thereafter Korsnick promptly placed a telephone call to Sergeant S. O. Perrine at Moundsville, communications officer for the state police in that area, who advised him that an automobile bearing the registration plates in question was stolen at Romney, West Virginia, on the night of November 11, 1957. Korsnick testified that he requested Sergeant Perrine to contact the Department of Motor Vehicles by radio in an effort to get additional information; that he called Thomas J. Cooper, Mayor of the City of McMechen; that Mayor Cooper "said he was busy and for me to hold onto him * * * and for me to further check the man and the vehicle to ascertain exactly what was what;" that he called the police department at Wheeling in search of further information, and was advised that "they also had it on the hot sheet, the same number listed"; that he called Sergeant Perrine "about five times"; that Sergeant Perrine stated that his index card file indicated that the car bearing the license plate in question was stolen, but that, shortly prior to plaintiff's release from custody, he was advised by Perrine that some mistake had been made in relation to the license plate number in question.

Eventually, the exact time being in dispute, the plaintiff was placed in a cell in the downstairs portion of the city building, after having been searched for concealed weapons. While he was fingerprinted, he was not handcuffed at any time, and the evidence fails to disclose that he was mistreated by violence, verbal abuse or otherwise. The plaintiff says that he was placed in the cell about six o'clock, and that he was

kept there for about two hours. On the other hand, Korsnick testified that, from his best recollection, the plaintiff was in the cell from 6:25 p.m. until 7:10 p.m.

The plaintiff testified that Korsnick refused to permit him to use the telephone until after he was removed from the cell. Korsnick denied that he refused at any time to permit the plaintiff to use a telephone, but testified that, on the contrary, plaintiff made at least three telephone calls and received several calls during the time he was detained. The evidence discloses that the plaintiff called by telephone to his wife at their residence at 184 Zane Street, Wheeling, after he was removed from the cell. As a consequence the plaintiff's wife and daughter and the daughter's "boy friend" came to the city building a short while before the plaintiff was released, and perhaps while he was actually being released.

Korsnick testified that shortly after their arrival at the city building, he requested that the plaintiff supply further means of identification, but that the plaintiff failed to reply; and that about that time he told the plaintiff that "the motor vehicle he was operating was stolen", and that it would be necessary "to hold onto him"; and that the plaintiff was "very uncooperative".

Korsnick testified further that about 7:15 or 7:30 o'clock he brought the plaintiff upstairs from the cell "into what is known as the water office and asked there if he had any additional information, that something was wrong here"; that the plaintiff produced "a bill of sale from Sonderman Motors" for the motor vehicle he had been operating; that "if he had showed me that at first that man probably never would have went to jail when I first asked for it"; and that shortly thereafter the plaintiff was discharged. Korsnick testified that either he, or some other person in his presence, (the record of the testimony in that respect not being clear) apologized to the plaintiff as follows: "He explained to Mr. Willey the circum-

stances of the arrest; also apologized to him for the arrest, even though we tried to show him it was not our fault. We were just complying with orders." At another point in his testimony Korsnick stated: "I showed him the hot sheet, showed him his license number and explained to him what the hot sheets were. I tried to explain to him why he was stopped and the reason for it, and everything else, and then I told him that we know where he lives, and if something comes out of this we will then have to pick him up again." Korsnick testified that a "mistake had definitely been made", but that "some one else made the mistake, and I was just doing my duty."

Sergeant S. O. Perrine, communications officer of the state police, stated that Korsnick called him approximately "half a dozen times after the first time while I was checking on this"; and that in the meantime he advised Korsnick that "according to our records it was a stolen vehicle." Mrs. Garnett Willey, wife of the plaintiff, testified that she arrived at the city building a short while before her husband was released, and that at that time Korsnick "was talking to my husband and showed me a sheet of paper with these numbers on it, and there was a star after one number that was the same license number, and I said, 'What does that mean?', and he said 'that means a stolen car.' "

William Rockey testified that he was a member of the police force of the City of McMechen and that, while not on duty or in uniform, he went to the city building about 7:30 on the evening in question; that Mr. Willey was then talking on the telephone; and that subsequently "Mr. Korsnick answered the phone, and he said 'It is for you, Mr. Willey, from Sonderman Motors.' " Officer Rockey further testified that later, "approximately quarter of eight", while Mr. Willey was sitting in the water office, the following conversation occurred: "Mr. Korsnick said, 'I am checking with the state police on this.' Mr. Willey said—he said, 'That is all right, I want to get to the

bottom of this. There is plenty of time.' He said, 'I am in no hurry,' he said 'O. K.' and he was called to the phone a couple of times.''

Mayor Thomas J. Cooper testified that when Korsnick first reported the situation to him, ''I told him to detain the man *of* suspicion of committing a felony since the car license number was on the hot sheet.''

The defendant's petition for a writ of error charges, as the sole assignment of error, that the trial court erred in setting aside the verdict, and in awarding a new trial.

While, as previously indicated, there is some conflict between the testimony of the plaintiff and that of the defendant Korsnick, perhaps it is accurate to say that the facts are in the main undisputed.

Chapter 129, Acts of the Legislature, Regular Session, 1951, (Code, 17A-8-5), provides: ''Any person who, * * * has in his possession any vehicle which he knows or has reason to believe has been stolen or unlawfully taken * * * is guilty of a felony.'' By reason of Code, 61-3-13, as amended, simple larceny of goods or chattels ''of the value of fifty dollars or more'' constitutes grand larceny, punishable by confinement in the penitentiary not less than one nor more than ten years. Code, 61-3-18, is, in part, as follows: ''If any person buy or receive from another person, or aid in concealing, or transfer to a person other than the owner thereof, any stolen goods or other thing of value which he knows or has reason to believe has been stolen, he shall be guilty of the larceny thereof * * *.'' Code, 61-11-1, provides: ''Such offenses as are punishable with death or confinement in the penitentiary are felonies. * * *.''

The third point of the syllabus of the case of *State ex rel. Brown v. Spangler,* 120 W. Va. 72, 197 S. E. 360, is as follows: ''An officer, with authority to conserve the peace, may, without a warrant, arrest any person who he, *upon reasonable grounds,* believes has

committed a felony, though it afterwards appears that no felony was actually perpetrated. This rule applies to a person charged with a felony in a sister state." In the case of *Allen v. Lopinsky*, 81 W. Va. 13, 94 S. E. 369, Judge Poffenbarger, in pointing out the difference between the rights of a peace officer and a private citizen, stated that the authorities are in practical unanimity as follows: "Under no circumstances, can a private person justify an arrest made without a warrant, by himself, or by an officer at his instance, for a misdemeanor, nor for a felony, unless the felony has been *actually committed.* * * * A peace officer may legally arrest, without a warrant, for a misdemeanor committed in his presence, or for an offense not committed in his presence, if he has reasonable ground to believe the offense so committed was a felony, *though it was not."* (Italics supplied.) See also 48 W. Va. Law Q. 207; 35 C. J. S., False Imprisonment, Section 22, page 650; 22 Am. Jur., False Imprisonment, Section 79, page 409.

From the foregoing it appears clearly that a peace officer may legally arrest without a warrant if he has reasonable grounds to believe that a felony has been committed, "though it afterwards appears that no felony was actually perpetrated", or if he has reasonable grounds to believe that "the offense so committed was a felony, though it was not." A municipal police officer likewise may, in proper circumstances, arrest without a warrant. Code, 8-4-25, as amended; *State v. Mullins,* 135 W. Va. 60, 62 S. E. 2d 562; *State ex rel. Pitts v. Chambers,* 144 W. Va. 224, 107 S. E. 2d 512.

"An arrest is not necessarily unlawful so as to afford ground for an action of false imprisonment because the plaintiff was innocent of the offense for which the arrest was made, if the forms of law were observed, * * *." *Finney v. Zingale,* 82 W. Va. 422, pt. 2 syl., 95 S. E. 1046. See also *McNunis v. Zukosky,* 141 W. Va. 145, at pages 148-149, 89 S. E. 2d 354, 357. "False arrest or false imprisonment gives an absolute

right to recover at least *nominal damages,* and neither probable cause to believe the injured party guilty of an offense nor lack of malice on the part of the defendant will legally justify the wrongful act or defeat the right of action." (Italics supplied). *Noce v. Ritchie et al.,* 109 W. Va. 391, 155 S. E. 127, pt. 2 syl. See also *George v. Railway Company,* 78 W. Va. 345, 88 S. E. 1036. "In effecting an arrest an officer is presumed to have acted in good faith. The law does not require him to be infallible. He must be a man whose faculty to exercise sound judgment is at least up to the average. It is the duty of the jury to judge whether this be true or not. If, it be true, *and if a conscientious, understandable mistake has been made by an officer in effecting a justifiable arrest, then there is no liability."* (Italics supplied.) *Mullins v. McClung,* 123 W. Va. 682, 688-9, 17 S. E. 2d 621, 625. See also *Vorholt v. Vorholt,* 111 W. Va. 196, 160 S. E. 916. "The fact of an illegal restraint raises the right to recover at least nominal damages, but there is no liability for even nominal damages where the restraint is not shown to be improper." 35 C. J. S., False Imprisonment, Section 63, page 770. See also 22 Am. Jur., False Imprisonment, Section 129, page 436.

Counsel for the plaintiff in their brief concede that a peace officer has the right under proper circumstances to arrest for a felony without a warrant; that if an arrest is lawful, the fact that the person arrested is later exonerated or acquitted does not afford basis for an action for false arrest or false imprisonment; and that "the case at bar can be decided on the narrow issue of whether the arrest of Mr. Willey by police officer Korsnick was lawful." In this connection counsel for the plaintiff point out that Korsnick, in his testimony, stated that he arrested the plaintiff "for the operation of a stolen vehicle", or "for the operation of a stolen motor vehicle." It is asserted further in this connection that the mere "operation" of a stolen automobile does not constitute a crime, particularly a felony; and that, therefore, the arrest and con-

sequent detainment of the plaintiff were unlawful, and that under such circumstances the plaintiff is entitled to recover at least nominal damages. From a written opinion of the learned trial judge, made a part of the record herein, it appears that it was on this basis that the verdict was set aside and a new trial awarded to the plaintiff. We are unable to perceive the force of such contention.

While the officer no doubt employed technically inappropriate language in describing the exact basis of the arrest and detention, the record fails to disclose that there was any uncertainty or misunderstanding in this connection throughout the trial. As previously stated herein, Chapter 129, Acts of the Legislature, Regular Session, 1951, (Code, 17A-8-5) provides that if one "has in his possession any vehicle which he knows or has reason to believe has been stolen or unlawfully taken," he shall be guilty of a felony. To state that one is arrested for "operating" a stolen motor vehicle is essentially the same as stating that he is arrested for having "in his possession" a motor vehicle "which he knows or has reason to believe has been stolen." Throughout the trial no objection was urged by the plaintiff and no question was raised on his behalf to challenge the technical inexactitude of the terminology employed by Korsnick in describing the basis of the arrest. We believe that the proposition urged in behalf of the plaintiff in this connection is captious to an unwarranted degree and lacking in substance.

One very obvious purpose of the "hot sheets" issued by the Department of Public Safety, and one very obvious purpose of similar lists distributed by the Department of Motor Vehicles in accordance with Chapter 129, Acts of the Legislature, Regular Session, 1951, (Code, 17A-8-3) is to enable police officers to apprehend persons operating stolen motor vehicles. The jury was warranted in finding, and by its verdict it obviously did find that the defendant Korsnick acted properly and reasonably in apprehending the plain-

tiff; that the officer proceeded promptly and expeditiously in his investigation; and that the plaintiff was not unreasonably detained or mistreated. While an unfortunate mistake was made, the jury obviously believed, as did Korsnick, that the mistake was not his but that of some other person or persons.

Police officers in the performance of their duties are frequently required to enter into situations of danger and to make difficult decisions. Common sense dictates that in the proper performance of such duties, their actions should be appraised with a fair degree of benignity and charity. A police officer in the performance of his duty as such is a minister of justice and entitled to the peculiar protection of the law. *Reynolds v. Griffith,* 126 W. Va. 766, 770, 30 S. E. 2d 81, 83; *State v. Reppert,* 132 W. Va. 675, pt. 4 syl., and page 691, 52 S. E. 2d 820, 830. As was stated in the case of *State v. McClung,* 123 W. Va. 682, 688, 17 S. E. 2d 621, 625, "if a conscientious, understandable mistake has been made by an officer in effecting a justifiable arrest, then there is no liability." "Mere loss of freedom cannot constitute false imprisonment even though it is unjust; the imprisonment must be unlawful. No system of jurisprudence has yet been invented that is infallible. Mistake and injustice to the individual will occur under any judicial system, in the application of either civil or criminal jurisprudence." 22 Am. Jur., False Imprisonment, Section 6, page 357.

We are by no means unsympathetic to the plaintiff because of the inconvenience caused to him. But the jury by its verdict has found that the officer acted reasonably and lawfully, and, therefore, he is not liable to respond in damages in an action by the plaintiff. *Johnson v. Railway Co.,* 82 W. Va. 692, pt. 2 syl., 97 S. E. 189. It is the peculiar function of juries to resolve disputed questions of fact and to draw reasonable inferences from undisputed facts. *Butcher v. Stull,* 140 W. Va. 31, 82 S. E. 2d 278; *Davis v. Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Thrasher v.*

*Amere Gas Utilities Co.,* 138 W. Va. 166, 75 S. E. 2d 376.

For reasons stated herein, the judgment of the Circuit Court of Marshall County is reversed, the verdict of the jury is reinstated, and judgment for the defendants is entered in this Court. *Ware v. Hays,* 119 W. Va. 585, 195 S. E. 265; *Watkins v. Baltimore and Ohio Railroad Co.,* 130 W. Va. 268, 43 S. E. 2d 219.

*Reversed and rendered.*